1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CABN 165823)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7478
7       FAX: (415) 436-7234
        John.Hemann@usdoj.gov
8
   Attorneys for United States of America
9

**FILED**

MAY 27 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

                         UNITED STATES DISTRICT COURT
10
                       NORTHERN DISTRICT OF CALIFORNIA
11
                            SAN FRANCISCO DIVISION
12

CR- 16-00199 YGR

13
14  UNITED STATES OF AMERICA,          )  UNITED STATES' SENTENCING
                                       )  MEMORANDUM, MOTION TO WAIVE
         Plaintiff,                    )  PRESENTENCE REPORT, AND MOTION FOR
15                                     )  EXPEDITED SENTENCING
         v.                            )
16                                     )  Date:  June 3, 2016
    DISCOVERY SALES, INC.,             )  Time:  3:00 pm
17                                     )
         Defendant.                    )  **FILED UNDER SEAL**
18                                     )

19

20        The United States of America files this sentencing memorandum pursuant to Criminal Local

21  Rule 32-5(b) in support of its recommendation that the Court sentence defendant Discovery Sales, Inc.

22  (DSI) to pay an agreed-upon fine of $8 million and restitution to Fannie Mae and Freddie Mac in the

23  combined amount of $3 million.  The United States also respectfully moves this Court, pursuant to

24  Federal Rule of Criminal Procedure 32(c)(1)(A)(ii) and Criminal Local Rules 32-1(b) and 32-2, to waive

25  the presentence report in this matter and sentence DSI on an expedited basis on June 3, 2016, after

26  accepting DSI's guilty plea.  DSI will separately file papers indicating that it waives its right to a

27  presentence report and, as provided in the Plea Agreement, requests expedited sentencing.

28        This memorandum provides the factual background for the Court and outlines the material terms

SENTENCING MEMORANDUM
CR 16-0199 YGR

1  of the Plea Agreement between the United States and DSI, in the event the Court waives the presentence

2  report and grants the parties' request to impose a sentence on June 3, 2016.  A copy of the DSI

3  11(c)(1)(C) Plea Agreement is attached as Exhibit A.  Federal Rule of Criminal Procedure 32(c)(1)(A)

4  permits the Court to sentence the corporate defendant in this matter without the preparation of a

5  presentence report if the Court finds that the information in the record enables it to exercise its sentencing

6  authority meaningfully under 18 U.S.C. § 3553, and the Court explains its finding on the record.  See also

7  Criminal Local Rule 32-1(b).  The United States submits that the information contained in this

8  memorandum and the attached Plea Agreement, as well as the record in a number of related cases

9  described below, are sufficient to enable the Court to exercise its sentencing authority under 18 U.S.C. §

10  3553 without the need of a presentence report.  If the Court finds that it does not have sufficient

11  information to allow for the imposition of sentence on the scheduled date of the plea hearing, the parties

12  are prepared to submit additional information requested by the Court.

13  **I.      BACKGROUND AND OFFENSE CONDUCT**

14  On July 18, 2013, the United States filed an Information charging DSI with bank fraud, in

15  violation of 18 U.S.C. § 1344.  DSI will waive indictment when arraigned on the Information at 9:30 am

16  on June 3, 2016.

17  DSI was a company created by Albert Seeno III to sell new homes built by Discovery Builders,

18  Inc. ("DBI"), Albert D. Seeno Construction Co., Inc. ("AD Seeno"), and other entities affiliated with

19  Albert Seeno III and the Seeno family ("the builders").  The homes were built in developments

20  throughout the East Bay Area, including in Contra Costa and Alameda Counties.

21  DSI is the sales arm of a group of affiliated construction companies that build new homes in the

22  East Bay and I-80 corridor.  When the housing market began to soften in 2006-2008, DSI took steps to

23  avoid losing its position in the market – it had to keep selling houses at a certain price point.  The steps

24  taken by DSI included incentivizing new home buyers by paying their downpayments and subsidizing

25  their mortgage payments.  DSI, its employees, and others worked to ensure that these incentives were not

26  disclosed in the mortgage loan applications or related documents submitted to mortgage lenders.  If they

27  had been disclosed, bank underwriters would not have approved the loans.

28  Over 325 Seeno and Discovery homes during the period 2006 – 2008 involved the use of

SENTENCING MEMORANDUM
CR 16-0199 YGR

1 incentives.  The total sales for those homes exceeded $200 million.

2       The Information filed against DSI is the most recent case filed in connection with an investigation
3 by the FBI into a scheme to sell homes built by affiliates of DSI to unqualified buyers at inflated prices.
4 In connection with this investigation, the U.S. Attorney's Office has filed and resolved charges against
5 nine individuals, three of whom are still pending sentencing:

6   • *United States v. Tony Phan, Miguel Arenas, George Zevada, and Chang Park*, Case No. 13-0556
7 YGR.  Phan was an underwriter for a mortgage lender called Homecomings Financial.  Arenas was a tax
8 preparer.  Zevada and Chang worked for a Southern California mortgage broker.  Together, they
9 conspired to arrange for fraudulent loans for unqualified buyers, including buyers of homes for DSI.  This
10 Court sentenced Phan and Arenas to terms of probation and Zevada to six months in prison.  Phan has not
11 yet been sentenced.

12   • *United States v. Sharon Wang and Heather Yin*, Case No. CR 11-0686 JSW.  Wang and Yin were
13 real estate agents and loan brokers. They brought buyers to DSI who were unable to fund home purchases
14 legitimately.   They received large commissions, generally $30,000, in exchange for introducing the
15 buyers to DSI.  These buyers filled out phony loan applications, which Wang directed to a co-conspirator
16 who was employed by Bank of America.  Wang and Yin were sentenced by the Honorable Jeffrey S.
17 White to sentences of probation.

18   • *United States v. Jason Sterlino*, Case No. CR 13-0231 JSW.  Sterlino was a sales manager for
19 DSI. He received a kickback from Wang and Yin from the commissions they received from DSI.  He
20 knew that the buyers Wang and Yin were bringing to him were not qualified for the loans they were
21 receiving.  Sterlino also knew that the loan applications being submitted to the mortgage lenders did not
22 disclose the various incentives DSI provided to the buyers.  Sterlino had been instructed to ensure that the
23 incentives remain hidden from the lenders.  Sterlino was sentenced by Judge White to six months in
24 prison.

25   • *United States v. Carey Hendrickson*, Case No. CR 12-0292 YGR.  Hendrickson was a manager at
26 DSI who reported to Ayman Shahid.  Hendrickson was involved in administering the incentive programs
27 that form the basis for the charges against DSI.  Hendrickson also personally participated in one of the
28 fraud scheme utilized by DSI to move homes at inflated sales prices.  Hendrickson bought,

simultaneously, three homes from DSI.  Without putting down any of her own money, Hendrickson purchased three DSI homes using loans obtained from three different mortgage lenders.  Neither she nor DSI disclosed to the lenders that she was purchasing three homes simultaneously.  Two of the homes went into foreclosure.

- *United States v. Ayman Shahid*.  Case No. CR 14-0271 YGR.  Shahid's conduct forms the primary basis for the charge against DSI.  Shahid was the vice president of DSI, reporting to Albert Seeno III, during the 2006-2008 time period.

The following information was obtained through the FBI investigation, and the United States would be prepared to prove it were the case against DSI to go to trial.  From 2006 to 2008, DSI inflated the sale price of new homes by offering significant cash and other incentives to new home buyers.  The primary purpose of the price inflation was to support a large line of credit the builders maintained, which was collateralized by the new homes and the property on which the homes would be built.  If the home and property values dropped, the value of the collateral would drop and the line of credit would be reduced or terminated, or additional collateral would be required to secure the line of credit.  Accordingly, it was necessary to maintain inflated home sales prices, and participated in schemes and devices to accomplish this goal.  This is what is commonly known as a "builder bailout" scheme.

During 2006-2008, buyers with little or no money of their own were purchasing homes at prices that were inflated through the use of incentives.  As Shahid explained in his plea agreement:

> The buyers were not required to possess or post any of their own money when buying a home; DSI, the builders, and their affiliates would provide money to buyers to make down payments.  The loans were secured by homes that were in some cases worth less than the loan amount; DSI did not make an effort to determine the true value of these homes.  As the financial crises worsened, the problem was exacerbated by the falling market.

It was part of the scheme to ensure that evidence of the incentives did not appear in the bank loan files.  If the incentives appeared in the bank loan files, the loan underwriters would likely reject the loans, primarily because the loan-to-value ratio would not support the requested loan on the inflated sales price of the home.  For this reason, DSI employees took steps to ensure that the details of the incentives that were being given to specific buyers did not appear in the bank loan files, including not informing appraisers of the incentives that were being given to buyers.

1    One of the incentive programs used by DSI and the builders was a down payment assistance

2  program.  The builders created an entity called the Collateral Financing Group ("CFG") to make what

3  were characterized as loans to home buyers for the purpose of funding their down payments.  I knew

4  that these loans were either expressly forgivable or forgivable in fact because neither CFG nor the

5  builders made substantial efforts to obtain loan repayment from the buyers.  No effort was made to

6  determine whether the buyers were capable of repaying CFG loans.  Although managers of the preferred

7  lenders were aware of the incentive programs, it was part of the scheme that the amount of CFG loans

8  made to particular buyers and the fact that they were forgivable and/or forgiven in fact was not disclosed

9  by DSI to the mortgage lenders.

10    The banks that were originating the loans would sell the mortgages in a secondary market shortly

11  after origination.  It was, therefore, important to ensure that buyers would keep current on mortgage

12  payments.  DSI, and its employees and affiliates, created various devices, including the Existing

13  Mortgage Assistance Program (EMAP), to make cash payments to buyers for a short period of time so

14  that they would not default.  EMAP was treated, instead, as a way of providing undisclosed cash

15  incentives to home buyers.

16    In the plea agreement, DSI agrees that it is guilty of bank fraud based a *respondeat superior*

17  theory of liability derived from their guilty pleas.  DSI agrees that Shahid, as vice president of DSI, and

18  Carey Hendrickson and Jason Sterlino, all of whom were employed by DSI during the relevant time

19  period, committed bank fraud and engaged in a conspiracy to commit bank fraud by fraudulently

20  causing bank underwriters to approve mortgage loans for unqualified buyers.  Corporate liability may be

21  predicated on *respondeat superior* liability.  See, *e.g., United States v. Hughes Aircraft*, 20 F.3d 974 (9th

22  Cir. 1994).

23    DSI also agrees, as a matter of factual proof, that from 2006 to 2008, certain buyers with little or

24  no funds of their own were induced to purchase homes at prices that were increased through the use of

25  financial incentives that were not disclosed to the mortgage lenders.  DSI acknowledges that these

26  buyers were not required to possess or post any of their own funds when buying a home; DSI arranged

27  through its affiliates for money to be provided to these buyers to make down payments and cover

28

1   existing mortgage payments.  DSI agrees that the mortgage lenders and secondary purchasers of

2   mortgage loans affected by the fraud schemes were federally insured financial institutions.

3

4   **II.     MATERIAL TERMS OF THE DSI PLEA AGREEMENT**

5   The material terms of the plea agreement, attached hereto as Exhibit A, between DSI and the

6   U.S. Attorney's Office include:

7   1.     DSI will waive indictment, waive all rights as enumerated in the plea agreement, and

8   plead guilty to a one-count Information charging it with bank fraud, in violation of 18 U.S.C. § 1344.

9   DSI will agree that there is a factual basis for the plea, as set forth in Paragraph 2 of the Plea Agreement.

10  The United States would be able to prove at trial those facts, as well as the facts set forth in the plea

11  agreements for former DSI employees Ayman Shahid, Carey Hendrickson, and Jason Sterlino.

12  2.     DSI and the United States agree that the appropriate sentence in this case is a fine of $8

13  million, a special assessment of $400, and a 5 year term of probation.  The fine will paid in five

14  installments and secured by a litigation bond.  The first installment of $1,333,333 shall be paid on the

15  one year anniversary of sentencing in this matter, with three subsequent $1,333,333 installments on each

16  yearly anniversary thereafter until the final payment.  Interest will accrue beginning on the date of entry

17  of judgment and the fifth and final installment will be $2,666,668, plus any remaining interest due and

18  owing.

19  3.     DSI will pay restitution in the amount of $3,000,000 within 120 days of sentencing.  The

20  basis for this restitution payment is explained below.

21  4.     The United States agrees not to file additional charges related to its investigation into

22  undisclosed incentives and related practices against DSI, its affiliates, or employees or DSI or its

23  affiliates, except the three former employees already charged, as set forth in paragraph 18 of the Plea

24  Agreement.

25  **III.    SENTENCING GUIDELINES CALCULATIONS**

26  The offense level calculation for DSI is the same calculation used in the plea agreement of

27  Ayman Shahid, the former DSI officer on whose guilty plea DSI's *respondeat superior* liability is in

28  part based.  The total loss using the Ninth Circuit-approved formula is $75 million, which measures the

SENTENCING MEMORANDUM
CR 16-0199 YGR

1   difference between the loan amount and, essentially, the amount the home sold for after default.  This

2   loss amount was calculated by Navigant, an independent consultant retained by the United States, and

3   reviewed and agreed to by counsel for both Shahid and DSI.  The parties and Navigant followed the

4   formula approved by the Ninth Circuit in *United States v. Morris*, 744 F.3d 1373 (9th Cir. 2014).[1]  A $75

5   million loss results in a 24 level increase in the offense level under U.S.S.G. § 2B1.1.

6          The final offense level includes a downward departure because the parties agree that the $75

7   million number is overstated as to DSI and Shahid.  This conclusion is based primarily on the

8   contributory culpability of the mortgage lenders who funded the loans at issue.  The parties agree that

9   the preferred mortgage lenders, Wells Fargo and J.P. Morgan Chase, were on some notice that DSI was

10  engaged in various shenanigans to inflate the value of their homes.  Employees of the preferred lenders

11  were embedded with DSI employees, and DSI continued selling homes and maintained prices, even as

12  the market was crumbling around it.  The banks periodically told DSI to be sure disclose all incentives,

13  yet did little to ensure that DSI was doing so – which it was not.  Something was amiss, yet the preferred

14  lenders continued to pump out loans on DSI properties and generate fees and payments on those loans

15  before selling the loans on the secondary market.

16         To that point, the evidence does not prove that the originating lenders lost $75 million.  This is a

17  result of the practice, prevalent at the time, of securitizing poorly performing mortgages.  After

18  originating loans, the mortgage lenders very quickly dumped most of them into the secondary securities

19  market.  For the most part, the mortgage lenders who originated the loans on DSI homes made money in

20  the origination then got rid of the loans by selling them in the secondary markets.  As the Court can see

21  from this trajectory of the investigation that led to this case, everyone was making money gaming the

22

23  _____

    [1] "We adopt the two-step approach first articulated by the Eastern District of Virginia, and subsequently

24  adopted by the Second, Sixth, and Tenth Circuits. In calculating loss in mortgage fraud cases, these
    Circuits hold that the first step is to calculate the greater of actual or intended loss, where actual loss is

25  the reasonably foreseeable pecuniary harm from the fraud. This amount will almost always be the entire
    value of the principal of the loan, as it is reasonably foreseeable to an unqualified borrower that the

26  entire amount of a fraudulently obtained loan may be lost. The second step is to apply the "credits
    against loss" provision and deduct from the initial measure of loss any amount recovered or recoverable

27  by the creditor from the sale of the collateral. This second calculation is made without any consideration
    of reasonable foreseeability." *United States v. Morris*, 744 F.3d 1373, 1375 (9th Cir. 2014)

28

SENTENCING MEMORANDUM
CR 16-0199 YGR

1  system, or at least trying to do so:  the builders, the buyers, the real estate agents, the mortgage brokers,

2  and the originating banks, and the banks who securitized the bad loans.  This is why tagging one

3  participant, the builder, with a loss number using the normal formula which assumes a completely

4  innocent bank victim[2] is not fair or just and the United States accordingly recommends a downward

5  departure of four levels, a departure to which both DSI and Shahid have agreed.

6        The parties agree that the offense level should be calculated as follows, resulting in a base fine of

7  $8.5 million:

8            Offense Level (U.S.S.G. §§ 8C2.3 and 2B1.1)

9                  Base Offense Level, U.S.S.G. § 2B1.1:                    7

10                 Specific Offense Characteristic, U.S.S.G. § 2B1.1:       24

11                 Downward Departure, U.S.S.G. § 2B1.1, cmt. 20(c):        -4

12                 Total Offense Level:                                     27

13                 Base Fine                                                $8.5 million

14        In the case of a corporate plea, the ultimate fine is determined by calculating the culpability score

15  under U.S.S.G. § 8C2.5, applying the fine multiplier under U.S.S.G. § 8C2.6, and then the fine range

16  under U.S.S.G. § 8C2.4.  The parties agree that the fine range, here, is $6.8 to $13.6 million.

17            Culpability Score (U.S.S.G. § 8C2.5)

18                 Base Score, U.S.S.G. § 8C2.5(a):                    5

19                 Involvement or Tolerance, U.S.S.G. § 8C2.5(b)(5):   1

20                 Acceptance, U.S.S.G. § 8C2.5(g)(3):                 -2

21                 Total Culpability Score:                            4

22            Fine Multiplier, U.S.S.G. § 8C2.6:                       .8-1.6

23            Fine Range, U.S.S.G. § 8C2.4(d):                         $6.8 to $13.6 million

24        The $8 million fine to which the parties agree is within the fine range prescribed by the

25

26  _____

27  [2] To be clear, the scheme involved DSI causing false statements to be made to the originating banks.  These false statements made the loans look clean, which allowed the originating banks to sell the loans in the secondary markets.  The incentives were occasionally disclosed accidentally in the loan documents or to appraisers, which required the originating banks either to reject them or, if too late, keep them in their own portfolios.

28

SENTENCING MEMORANDUM
CR 16-0199 YGR

1  Sentencing Guidelines.

2  **IV.    BOND POSTED BY DSI**

3  The parties have agreed on the filing of a litigation bond, under which the fine will be paid if DSI

4  defaults on any payment.  The bond should be lodged with the Clerk of Court and, if defendant defaults

5  on any payment, judgment should be issued on the bond in favor of the United States.

6  **V.    RESTITUTION**

7  Because of the practice of selling loans in the secondary markets and as part of large securities

8  created by investment banks, it was not possible to identify the individual companies or individuals who

9  lost money as a result of the scheme, with the exception of the government-sponsored lending

10  institutions, Fannie Mae and Freddie Mac.  These two institutions lost a total of approximately $3

11  million from DSI homes originally sold during 2006-2008, and that is the restitution the United States

12  seeks through the plea agreement.

13  During the time period of the Information, DSI worked with two "preferred lenders," Wells

14  Fargo and J.P. Morgan Chase.  Certain employees and managers of these two preferred lenders knew

15  about the incentive programs offered by DSI and the builders, and knew that the incentives were not

16  being disclosed in the loan files.  Bank executives informed DSI that they required details regarding

17  incentives to be included in the loan files, but in truth the preferred lenders performed little or no

18  diligence to see that the incentives they knew were being provided were disclosed in the loan files.

19  The originating lenders who made loans to purchase DSI properties, including Wells Fargo and

20  J.P. Morgan Chase, generally would not keep the mortgages and thus did not end up losing money as a

21  result of the DSI fraud scheme.  Instead, they would sell the mortgages to other banks who would

22  package them in securities that were sold to other investors.  These securities failed when the underlying

23  mortgages went into default.  It was impossible to trace the majority of the mortgage loans on the over

24  300 homes sold by DSI that were the subject of the FBI investigation; it would have been harder yet to

25  identify individual victims of the fraud given that the mortgages were securitized and traded.

26  The United States was able to trace a number of the mortgage loans on homes sold by DSI to

27  Fannie Mae and Freddie Mac.  The Federal Housing Finance Agency, Office of Inspector General, was

28  able to identify 20 specific home mortgages that were acquired by Fannie Mae and Freddie Mac and

1  then went into default.  Both Fannie Mae and Freddie Mac obtained these mortgage loans after they had

2  been originated by other banks.  The spreadsheet attached hereto as Exhibit B shows the financial

3  impact on Fannie Mae and Freddie Mac of foreclosures related to homes sold by DSI during the period

4  of the fraudulent incentive scheme.[3]  The parties agreed that various minor differences over the

5  calculation of the loss to Fannie Mae and Freddie Mac were best resolved by a compromise at a $3

6  million restitution figure.

7        The largest victim of defendant's conduct was the United States economy, which suffered in

8  2007 and 2008 in diverse ways as a result of the conduct of defendant and the many other culpable

9  participants in the mortgage crisis.  Because of the practice of securitization and the culpability of the

10  lenders themselves, it was not possible to identify all of the losses caused by defendant's conduct.

11  Under U.S.S.G. § 8B1.1(b)(2), restitution need not be ordered to the extent that "the number of

12  identifiable victims is so large as to make restitution impracticable," or "determining complex issues of

13  fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing

14  process to a degree that the need to provide restitution to any victim is outweighed by the burden on the

15  sentencing process."

16        However, with this plea agreement, the two taxpayer-sponsored financial services companies

17  that lost money as a direct result, Fannie Mae and Freddie Mac, will be made whole by the defendant

18  through the $3 million restitution payment.  This obligation was calculated by the independent inspector

19  general for the Federal Housing Finance Agency and it is one that the parties agree is appropriate.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28      [3] One of the loans, 2209 Truman, ultimately sold for more than the loan amount and, therefore, the total loss amount was reduced by $416,000.

SENTENCING MEMORANDUM
CR 16-0199 YGR

1

## VI.     CONCLUSION

2          The United States respectfully requests that the Court accept the proposed DSI plea agreement,

3   waive the presentence report, and sentence DSI on June 3, 2016.  Because the parties are requesting an

4   expedited sentencing, the United States has prepared a draft judgment, attached as Exhibit C.

5                                                  Respectfully submitted,

6                                                  BRIAN J. STRETCH
                                                   United States Attorney
7

8                                                  *John H. Hemann*
    Dated: May 26, 2016                            _____
9                                                  JOHN H. HEMANN
                                                   Assistant United States Attorney
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SENTENCING MEMORANDUM
CR 16-0199 YGR

Exhibit A

1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney

2  DAVID R. CALLAWAY (CABN 121782)
   Chief, Criminal Division
3
   JOHN H. HEMANN (CABN 165823)
4  Assistant United States Attorney

5      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
6      Telephone: (415) 436-7234
       John.Hemann@usdoj.gov
7
   Attorneys for United States of America
8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                  OAKLAND DIVISION

12

13 UNITED STATES OF AMERICA,          )  NO.
                                      )
14         Plaintiff,                 )  PLEA AGREEMENT
                                      )
15    v.                              )
                                      )
16 DISCOVERY SALES, INC.,             )
                                      )
17         Defendant.                 )
                                      )
18

19      Defendant, DISCOVERY SALES, INC. ("DISCOVERY SALES"), and the United States

20 Attorney's Office for the Northern District of California (hereafter "the government") enter into this

21 written plea agreement (the "Agreement") pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

22 Procedure:

23 The Defendant's Promises

24      1.      DISCOVERY SALES agrees that, as a corporate defendant, it is liable for the actions of

25 its employees and agents performed in the course and scope of their employment or agency.

26 Accordingly, DISCOVERY SALES agrees to plead guilty to Count One of the captioned Information

27 charging it with bank fraud in violation of 18 U.S.C. § 1344. DISCOVERY SALES agrees that the

28 elements of the offense are as follows: (1) the defendant knowingly executed a scheme to defraud a

PLEA AGREEMENT

financial institution as to a material matter; (2) the defendant did so with the intent to defraud the financial institution; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation. DISCOVERY SALES agrees that the maximum penalties for a violation of 18 U.S.C. § 1344 are as follows:

| | | |
|---|---|---|
| a. | Maximum fine | $1,000,000 or twice the gross gain or loss, whichever is greater (18 U.S.C. § 3571(c), (d)) |
| b. | Maximum probation term | 5 years (18 U.S.C. § 3561) |
| c. | Mandatory Special Assessment | $400 (18 U.S.C. § 3013) |
| d. | Restitution | |

2.     DISCOVERY SALES agrees that it is guilty of the offense to which it is pleading guilty, and agrees that the following facts are true: DISCOVERY SALES agrees that during the years 2006 through 2008 its then-employee and officer, Ayman Shahid, committed the crime of bank fraud, with which he was charged and has pleaded guilty. DISCOVERY SALES further agrees that Shahid, as vice president of DISCOVERY SALES, and Carey Hendrickson and Jason Sterlino, all of whom were employed by DISCOVERY SALES during the relevant time period, committed bank fraud and engaged in a conspiracy to commit bank fraud by fraudulently causing bank underwriters to approve mortgage loans for unqualified buyers. From 2006 to 2008, certain buyers with little or no funds of their own were induced to purchase homes at prices that were increased through the use of financial incentives. These buyers were not required to possess or post any of their own funds when buying a home; DISCOVERY SALES arranged for money to be provided to these buyers to make down payments.

DISCOVERY SALES further agrees that during the 2006 through 2008 time period the sales prices of certain homes were increased by offering financial incentives to new home buyers. DISCOVERY SALES arranged loans that were secured by the buyers' existing homes that were in some cases worth less than the loan amount, and DISCOVERY SALES did not make an adequate effort to determine the true value of these homes. Certain former employees of DISCOVERY SALES, including Shahid, committed bank fraud by taking steps to ensure information that would reduce the value of the homes was kept out of bank loan files. Specifically, the details of the incentives that were being given

PLEA AGREEMENT                                    2

1  to specific buyers were knowingly withheld from the bank loan approval documents because the true
2  loan-to-value ratio would not support the requested loan on the increased sales price of the home. If the
3  incentives had appeared in the bank loan files, the loan underwriters would likely have rejected the
4  loans.

5  DISCOVERY SALES agrees that numerous mortgage lenders and secondary purchasers of
6  mortgage loans affected by the bank fraud schemes described herein were federally insured financial
7  institutions.

8  3.  DISCOVERY SALES agrees that by entering this guilty plea it hereby waives all
9  objections to the form of the charging documents, and admits that it is in fact guilty of the offense to
10  which it is pleading guilty as set forth in the Information.

11  4.  DISCOVERY SALES agrees to appear at the plea and sentencing hearings through a
12  duly authorized corporate representative.

13  5.  DISCOVERY SALES knowingly and voluntarily waives the following rights through its
14  guilty plea:  (a) the right to plead not guilty; (b) the right to a speedy and public trial before a jury;
15  (c) the right to effective assistance of counsel at trial; (d) the right to be presumed innocent until guilt
16  has been established at trial beyond a reasonable doubt; (e) the right to confront and cross-examine
17  government witnesses at trial; (f) the right to compel or subpoena witnesses to appear on DISCOVERY
18  SALES's behalf at trial; (g) the right to move to suppress evidence or raise any other Fourth or Fifth
19  Amendment claims; (h) the right to any further discovery from the government and to pursue any
20  affirmative defenses and present evidence; (i) the right to appeal a finding of guilt, any orders of the
21  Court, and any aspect of its sentence, including restitution; and (j) the right to bring any collateral attack
22  against DISCOVERY SALES's conviction or sentence, including a petition under 28 U.S.C. § 2255 or
23  28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, except as it may relate to effectiveness of legal
24  representation.

25  6.  DISCOVERY SALES agrees not to ask the Court to withdraw its guilty plea at any time
26  after it is entered unless the Court declines to accept the sentence agreed to by the parties.
27  DISCOVERY SALES and the government mutually agree that either party may withdraw from this
28  Agreement if the Court does not accept the agreed upon sentence set out below. DISCOVERY SALES

PLEA AGREEMENT                    3

1  further agrees that the criminal statute of limitations shall be tolled from the date it signed the

2  Agreement until it has made all payments required under this agreement.  DISCOVERY SALES

3  understands that by entering into this Agreement:  (a) it agrees that the facts set forth in Paragraph 2 of

4  this Agreement shall be admissible against it under Fed. R. Evid. 801(d)(2)(A) in any subsequent

5  proceeding, including at trial, in the event it violates any of the terms of this Agreement, and (b) it

6  expressly waives any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the

7  facts set forth in Paragraph 2 of this Agreement in any such subsequent proceeding.  DISCOVERY

8  SALES understands that the government will not preserve any physical evidence obtained in this case.

9      7.  DISCOVERY SALES agrees that the Court will use the Sentencing Guidelines to

10  calculate its sentence.  DISCOVERY SALES understands that the Court must consult the Guidelines,

11  including Chapter Eight, and take them into account when sentencing, together with the factors set forth

12  in 18 U.S.C. § 3553(a).  DISCOVERY SALES agrees that the following Sentencing Guideline

13  calculations apply:

14      a.  Offense Level (U.S.S.G. §§ 8C2.3 and 2B1.1)

15      Base Offense Level, U.S.S.G. § 2B1.1(a)(1):      7

16      Specific Offense Characteristic, U.S.S.G. § 2B1.1(b)(1)(M):      24

17      Downward Departure, U.S.S.G. § 2B1.1, cmt. 20(C):      -4

18      Total Offense Level:      27

19      Base Fine, U.S.S.G. § 8C2.4:      $8.5 million

20      b.  Culpability Score (U.S.S.G. § 8C2.5)

21      Base Score, U.S.S.G. § 8C2.5(a):      5

22      Involvement or Tolerance, U.S.S.G. § 8C2.5(b)(5):      1

23      Acceptance, U.S.S.G. § 8C2.5(g)(2):      -2

24      Total Culpability Score:      4

25      c.  Fine Multiplier, U.S.S.G. § 8C2.6:      .8-1.6

26      d.  Fine Range, U.S.S.G. § 8C2.4(d):      $6.8 to $13.6 million

27      8.  DISCOVERY SALES agrees that a reasonable and appropriate disposition of this case

28  under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have

1 | agreed is, as follows:

2 |        a.    <u>Criminal Fine</u>:  DISCOVERY SALES shall pay a criminal fine of $8,000,000,

3 | which fine amount takes into account, among other things, the government's investigation cost in this

4 | matter.  The first installment of $1,333,333 shall be paid on the one year anniversary of sentencing in

5 | this matter, with three subsequent $1,333,333 installments on each yearly anniversary thereafter until the

6 | final payment.  Interest will accrue beginning on the date of entry of judgment and the fifth and final

7 | installment will be $2,666,668, plus any remaining interest due and owing.  DISCOVERY SALES may

8 | pre-pay all or part of the total fine.

9 |        b.    <u>Probation</u>:  DISCOVERY SALES will be placed on probation for a term of 5

10 | years for the purpose of court supervision of payment of the fine and restitution, starting the day

11 | DISCOVERY SALES is sentenced by the Court.  As a term of its probation, DISCOVERY SALES

12 | shall commit no further violations of federal, state, or local law, and shall conduct all its operations in

13 | accordance with the laws of the United States.

14 |        c.    <u>Mandatory Special Assessment</u>:  Pursuant to 18 U.S.C. § 3013, DISCOVERY

15 | SALES will pay a $400 mandatory special assessment at the time of sentencing.

16 |        d.    <u>Restitution</u>:  DISCOVERY SALES will pay restitution in the amount of

17 | $3,000,000 within 120 days of sentencing.  The restitution amount shall be paid to the Clerk, United

18 | States District Court for the Northern District of California, which will process and disburse the

19 | payments to the victims.

20 |     9.    DISCOVERY SALES agrees that the fine and restitution imposed by the Court against it

21 | will be due and payable as set forth herein. If DISCOVERY SALES fails to make any payment as

22 | prescribed by this Agreement, the entire amount of the fine and restitution ($11 million) shall become

23 | immediately due and payable and subject to immediate collection by the government, and DISCOVERY

24 | SALES understands that the government may seek immediate collection of the entire fine and restitution

25 | from any assets of DISCOVERY SALES.  DISCOVERY SALES agrees that it will make a good-faith

26 | effort to pay the fine and restitution it is ordered to pay.  DISCOVERY SALES agrees to pay the special

27 | assessment at the time of sentencing.

28 |     10.    DISCOVERY SALES shall provide a bond to secure payment of the outstanding amount

1    of the fine set forth in Paragraph 8(a) above, payable to the Clerk, United States District Court for the

2    Northern District of California. Such bond will be lodged with the Clerk of Court along with this

3    Agreement at the time of the plea.

4         11.     DISCOVERY SALES agrees that regardless of any other provision of this Agreement,

5    the government may and will provide the Court with all information relevant to the charged offenses and

6    the sentencing decision. The United States and DISCOVERY SALES jointly submit that this Plea

7    Agreement, together with the record that will be created by the United States and DISCOVERY SALES

8    at the plea and sentencing hearing, and the existing record of related cases before the Court, will provide

9    sufficient information concerning the defendant, the crime charged in this case, and the defendant's role

10    in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C.

11    § 3553. The United States and DISCOVERY SALES agree to request jointly that the Court accept the

12    defendant's guilty plea and impose sentence on an expedited schedule as early as the date of the

13    arraignment, based upon the record provided by the defendant and the United States, under the

14    provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. § 6A1.1, and Crim. L.R. 32-1(b). The Court's

15    denial of this joint request and referral to the Probation Department for a Presentence Report will not

16    void this Plea Agreement.

17         12.     DISCOVERY SALES agrees not to commit or attempt to commit any crimes before

18    sentence is imposed; to provide truthful information to the Court, the Probation Office, and the

19    government; and to comply with all of the other promises it has made in this Agreement. DISCOVERY

20    SALES agrees that if it fails to comply with any promises it has made in this Agreement, then the

21    government will be released from all of its promises in this Agreement, including those set forth in the

22    Government's Promises Section below, but DISCOVERY SALES will not be released from its guilty

23    plea.

24         13.     If DISCOVERY SALES changes its name, the renamed company shall be obliged to

25    meet all of the obligations of DISCOVERY SALES under this Agreement. If DISCOVERY SALES

26    merges with or is purchased by another company, the merger partner or purchaser shall be obliged to

27    meet all of the obligations of DISCOVERY SALES under this Agreement.

28         14.     DISCOVERY SALES agrees that this Agreement contains all of the promises and

agreements between it and the government, and supersedes any other agreements, written or oral. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

15. DISCOVERY SALES agrees that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

16. The government agrees not to file any additional charges against DISCOVERY SALES as a result of the investigation that led to the captioned Information.

17. The government agrees that the reasonable and appropriate sentence in this case is as set forth above, as secured by the bond to be filed pursuant to paragraph 10, unless the defendant violates any term of this Agreement or fails to accept responsibility.

18. The government agrees that it will not bring criminal charges related to the investigation into undisclosed incentives and practices used by DISCOVERY SALES, among other things, that led to the charge alleged in the captioned Information against any affiliated or related entity of defendant or any current or former owner, member, shareholder, director, officer, or employee of the defendant or its related or affiliated entities, except that the protections granted in this paragraph shall not apply to Ayman Shahid, Carey Hendrickson, and Jason Sterlino, and do not extend to employees of joint ventures between DISCOVERY SALES and preferred lenders during the time frame alleged in the Information. The government will not be bound to the terms of this paragraph if defendant fails to make any payment required under paragraph 8 of this Agreement, either directly or through the surety.

DISCOVERY SALES's Affirmations

19. DISCOVERY SALES represents that this Agreement shall bind DISCOVERY SALES, its successor corporation if any, and any other person or entity that assumes the obligations contained herein ("successors-in-interest"). DISCOVERY SALES, or its successors–in-interest, if applicable, shall provide the government with immediate notice of any name change, change in corporate or individual control, change in ownership, merger, change of legal status, sale or purchase of assets, divestiture of assets, or similar action affecting their ability to pay the fine or otherwise comply with this Agreement. No change in name, change in corporate or individual control, change in ownership, merger, change of legal status, sale or purchase of assets, divestiture of assets, or similar action shall

1    alter DISCOVERY SALES's obligations under this Agreement.  DISCOVERY SALES shall not engage

2    in any action to seek to avoid the obligations set forth in this Agreement.

3        20.    DISCOVERY SALES represents that it is authorized to enter into this Agreement.  On or

4    before the date of entry and filing of the Agreement, DISCOVERY SALES shall provide to the

5    government and the Court a notarized written statement, certifying that DISCOVERY SALES is

6    authorized to enter into and comply with all of the provisions of this Agreement.  The resolutions further

7    shall authorize a corporate representative to enter into this Agreement, and that all corporate formalities

8    for such authorizations have been observed.

9        21.    DISCOVERY SALES confirms that it has had adequate time to discuss this case, the

10   evidence, and the Agreement with its attorney and that its attorney has provided it with all the legal

11   advice that DISCOVERY SALES requested.

12       22.    DISCOVERY SALES confirms that its decision to enter a guilty plea is made knowing

13   the charges that have been brought against it, any possible defenses, and the benefits and possible

14   detriments of proceeding to trial.  DISCOVERY SALES also confirms that its decision to plead guilty is

15   made voluntarily, and no one coerced or threatened it to enter into this Agreement.

16

17   Dated: _____              _____
                                              WILLIAM GOODMAN for
18                                            DISCOVERY SALES, INC.

19                                            BRIAN J. STRETCH
                                              United States Attorney
20

21   Dated: _____              _____
                                              JOHN H. HEMANN
22                                            Assistant United States Attorney

23

24   ///

25   ///

26   ///

27   ///

28   ///

PLEA AGREEMENT                    8

23.    I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement.  In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: _____          _____

WILLIAM GOODMAN
WILLIAM KEANE
Attorneys for Defendant

Exhibit B

Fraud Loss

| LoanNo | Street Address | City | Servicer Name | Origination Date | Acquired | Loan Status | Sold Date | UPB | Delinquent | Disbursement | Sales Proceeds | MI Proceeds | Other Proceeds | Receipt Total | Loss Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1705404194 | 1024 PARKSIDE DR | VACAVILLE | BANK OF AMERICA, N.A. | 02/16/08 | FNMA | Preforeclosure Sale | 03/16/12 | $ 417,000 | $ 40,159 | $ 33,304 | $ 302,982 | | $ 181,080 | $ 484,062 | $ 6,400 |
| 1707252072 | 1032 AZEVEDO RANCH RD | VALLEJO | BANK OF AMERICA, N.A. | 06/07/08 | FNMA | REO Disposed | | $ 371,410 | $ 19,453 | $ 18,848 | $ 244,508 | $ 48,435 | 340 | $ 293,381 | $ 116,330 |
| 1707252022 | 2209 TRUMAN LN | OAKLEY | JP MORGAN CHASE BANK, NA | 05/07/08 | FNMA | REO Non Disposed | | $ 456,037 | $ 13,729 | $ 17,054 | $ - | $ 54,833 | 16,370 | $ 71,602 | $ 416,427 |
| 1706406011 | 2397 TAMALPAIS AVE | BRENTWOOD | JP MORGAN CHASE BANK, NA | 03/17/08 | FNMA | Preforeclosure Sale | | $ 417,000 | $ 32,620 | $ 23,524 | $ 236,059 | | | $ 236,059 | $ 237,085 |
| 1705440680 | 2917 RIO VERDE | PITTSBURG | WELLS FARGO BANK, N.A. | 10/17/07 | FNMA | REO Disposed | 04/20/09 | $ 417,000 | $ 10,650 | $ 25,017 | $ 384,340 | | 2,590 | $ 387,530 | $ 65,343 |
| 1706414217 | 501 TILDEN CIR | VACAVILLE | BANK OF AMERICA, N.A. | 01/18/08 | FNMA | Preforeclosure Sale | | $ 416,491 | $ 24,056 | $ 19,256 | $ 262,209 | | | $ 262,209 | $ 197,604 |
| 1705769968 | 432 TILDEN CIR | VACAVILLE | JP MORGAN CHASE BANK, NA | 11/11/07 | FNMA | REO Disposed | 04/28/11 | $ 398,354 | $ 18,322 | $ 13,671 | $ 204,546 | | 2,583 | $ 207,129 | $ 223,219 |
| 1706040984 | 6008 OLD QUARRY LOOP | OAKLAND | BANK OF AMERICA, N.A. | 04/17/08 | FNMA | REO Disposed | 02/25/11 | $ 416,811 | $ 46,568 | $ 35,290 | $ 200,239 | | 1,168 | $ 201,407 | $ 297,663 |
| 1706702747 | 6088 OLD QUARRY LOOP | OAKLAND | BANK OF AMERICA, N.A. | 02/16/08 | FNMA | Other Liquidated - Disposed | | $ 417,000 | $ 49,940 | $ 31,202 | $ 251,200 | | - | $ 251,200 | $ 237,942 |
| 1706106141 | 1429 BLUE ROCK CT | OAKLAND | BANK OF AMERICA, N.A. | 03/17/08 | FNMA | Preforeclosure Sale | | $ 417,000 | $ 44,086 | $ 25,376 | $ 299,822 | | 30 | $ 299,852 | $ 168,621 |
| 1706819955 | 604 SILVER STAR CT | VACAVILLE | BANK OF AMERICA, N.A. | 04/17/08 | FNMA | Preforeclosure Sale | | $ 361,523 | $ 15,256 | $ 4,339 | $ 257,010 | | 540 | $ 557,560 | $ 123,560 |
| 1706887569 | 725 GREENTREE CIR | FAIRFIELD | GMAC MORTGAGE, LLC | 04/17/08 | FNMA | Preforeclosure Sale | | $ 371,483 | $ 16,016 | $ 8,176 | $ 220,365 | | - | $ 220,365 | $ 175,372 |
| 470716773 | 2403 TAMALPAIS AVE | BRENTWOOD | JPMORGAN CHASE BANK | 09/27/07 | FHLMC | REO Sale Closed | 12/28/09 | $ 417,000 | $ 10,222 | $ 41,289 | $ 302,788 | | 1,539 | $ 304,329 | $ 164,163 |
| 494916031 | 25 WEDGEWOOD CT | PITTSBURG | JPMORGAN CHASE BANK | 12/12/07 | FHLMC | REO Sale Closed | 07/31/09 | $ 417,000 | $ 6,805 | $ 34,947 | $ 251,523 | | 5,105 | $ 256,628 | $ 201,925 |
| 498073343 | 6144 OLD QUARRY LOOP | OAKLAND | BANK OF AMERICA | 01/18/08 | FHLMC | REO Sale Closed | 09/05/09 | $ 417,000 | $ 6,733 | $ 43,163 | $ 277,753 | | - | $ 277,753 | $ 189,144 |
| 502044039 | 3510 MARKLEY CREEK DR | ANTIOCH | JPMORGAN CHASE BANK | 02/27/08 | FHLMC | Third party sale | 06/01/10 | $ 417,000 | $ 16,365 | $ 2,837 | $ 191,542 | | (240) | $ 191,295 | $ 245,026 |
| 511653008 | 3423 BLUE ROCK CT | OAKLAND | BANK OF AMERICA | 05/30/08 | FHLMC | REO Sale Closed | 02/18/11 | $ 433,020 | $ 9,585 | $ 84,269 | $ 363,239 | | - | $ 363,845 | $ 143,530 |
| 513759204 | 3024 DANBURY WAY | FAIRFIELD | BANK OF AMERICA | 04/15/08 | FHLMC | Third party sale | 07/15/10 | $ 416,553 | $ 11,755 | $ 7,449 | $ 274,459 | | 700 | $ 274,459 | $ 161,693 |
| 513350735 | 3016 DANBURY WAY | FAIRFIELD | BANK OF AMERICA | 04/16/08 | FHLMC | Short Sale | 11/12/10 | $ 417,000 | $ 32,473 | $ 26,976 | $ 394,585 | | - | $ 394,595 | $ 81,854 |
| 524395648 | 608 EL DORADO AVE | BRENTWOOD | BANK OF AMERICA | 05/21/08 | FHLMC | REO Sale Closed | 07/18/11 | $ 373,500 | $ 9,977 | $ 5,757 | $ 403,533 | | - | $ 403,533 | $ (14,269) |
| | | | | | | | | | | | | | Total Losses to FNMA and FHLMC | $ 3,456,622 |

Confidential Commercial Information - Confidential Treatment and FOIA Exemption Requested

Exhibit C

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 1

# UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| Northern | District of | California |

UNITED STATES OF AMERICA
**V.**

DISCOVERY SALES, INC.

## **JUDGMENT IN A CRIMINAL CASE**
(For Organizational Defendants)

CASE NUMBER:  CR 16-0199 YGR

William Goodman & William Keane
Defendant Organization's Attorney

## THE DEFENDANT ORGANIZATION:

☑ pleaded guilty to count(s)    one

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The organizational defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 18 U.S.C. 1344 | Bank Fraud | | One |

The defendant organization is sentenced as provided in pages 2 through    6    of this judgment.

☐ The defendant organization has been found not guilty on count(s)

☐ Count(s) _____ ☐ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant organization must notify the United States attorney for this district within 30 days of any change of name, principal business address, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant organization must notify the court and United States attorney of material changes in economic circumstances.

Defendant Organization's
Federal Employer I.D. No.:  90-0000393

Defendant Organization's Principal Business Address:

4061 Port Chicago Highway
Concord, California 95420

6/3/2016
Date of Imposition of Judgment


Signature of Judge

Yvonne Gonzalez-Rogers          U.S. District Judge
Name of Judge                            Title of Judge

6/3/2016
Date

Defendant Organization's Mailing Address:

4061 Port Chicago Highway
Concord, California 95420

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 1A

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment—Page _____ of _____ 6

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
        Sheet 2 — Probation

DEFENDANT ORGANIZATION: DISCOVERY SALES, INC.

CASE NUMBER: CR 16-0199 YGR

Judgment—Page   2   of   6

## PROBATION

The defendant organization is hereby sentenced to probation for a term of :

5 years

The defendant organization shall not commit another federal, state or local crime.

        If this judgment imposes a fine or a restitution obligation, it is a condition of probation that the defendant organization pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant organization must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page (if indicated below).

Defendant shall pay the $3 million restitution ordered by the Court within 180 days of sentencing.

Defendant shall pay the $8 million fine imposed by the Court on the following schedule: The first installment of $1,333,333 shall be paid on the one year anniversary of sentencing in this matter, with three subsequent $1,333,333 installments on each yearly anniversary thereafter until the final payment. Interest will accrue beginning on the date of entry of judgment and the fifth and final installment will be $2,666,668, plus any remaining interest due and owing.

Defendant shall lodge with the Clerk of Court on the day of sentencing a surety bond in the amount of $8 million payable to the Clerk of Court, Northern District of California. If defendant fails to make any fine payment on the schedule set forth above, the total amount of the bond shall be forfeit to the United States.

## STANDARD CONDITIONS OF SUPERVISION

1) within thirty days from the date of this judgment, the defendant organization shall designate an official of the organization to act as the organizations's representative and to be the primary contact with the probation officer;

2) the defendant organization shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

3) the defendant organization shall notify the probation officer ten days prior to any change in principal business or mailing address;

4) the defendant organization shall permit a probation officer to visit the organization at any of its operating business sites;

5) the defendant organization shall notify the probation officer within seventy-two hours of any criminal prosecution, major civil litigation, or administrative proceeding against the organization;

6) the defendant organization shall not dissolve, change its name, or change the name under which it does business unless this judgment and all criminal monetary penalties imposed by this court are either fully satisfied or are equally enforceable against the defendant's successors or assignees; and

7) the defendant organization shall not waste, nor without permission of the probation officer, sell, assign, or transfer its assets.

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 2A — Probation

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment—Page _____ of _____6_____

## ADDITIONAL PROBATION TERMS

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 2B — Probation

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.    Judgment—Page _____ of ____ 6
CASE NUMBER:  CR 16-0199 YGR

## SPECIAL CONDITIONS OF SUPERVISION

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 2C — Probation

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment—Page _____ of _____ 6

## ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 3 — Criminal Monetary Penalties

DEFENDANT ORGANIZATION: DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment — Page ___3___ of ___6___

## CRIMINAL MONETARY PENALTIES

The defendant organization must pay the following total criminal monetary penalties under the schedule of payments on Sheet 4.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 400.00 | $ 8,000,000.00 | $ 3,000,000.00 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant organization shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant organization makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| FHLMC | | $1,175,000.00 | |
| FNMA | | $1,825,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $          0.00 | $  3,000,000.00 | |

☑  Restitution amount ordered pursuant to plea agreement  $  3,000,000.00

☑  The defendant organization shall pay interest on restitution or a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 4 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant organization does not have the ability to pay interest, and it is ordered that:

   ☐  the interest requirement is waived for the    ☐ fine    ☐ restitution.

   ☐  the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 3A — Criminal Monetary Penalties

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.

CASE NUMBER:  CR 16-0199 YGR

Judgment — Page _____ of ___6___

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

AO 245E   (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
Sheet 3B — Criminal Monetary Penalties

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment — Page _____ of _____6_____

## ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

* Findings for the total amount of losses are required by Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245E      (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
             Sheet 4 — Schedule of Payments

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment — Page  4  of  6

## SCHEDULE OF PAYMENTS

Having assessed the organization's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

   ☐ not later than _____ , or
   ☐ in accordance with  ☐ C or  ☐ D below; or

**B** ☐ Payment to begin immediately (may be combined with  ☐ C or  ☐ D below); or

**C** ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☑ Special instructions regarding the payment of criminal monetary penalties:

   The $3,000,000 restitution payment shall be made within 180 days of the date of sentencing.

   The first installment of $1,333,333 shall be paid on the one year anniversary of sentencing, with three subsequent $1,333,333 installments on each yearly anniversary thereafter until the final payment.  Interest will accrue beginning on the date of entry of judgment and the fifth and final installment will be $2,666,668, plus any remaining interest due and owing.  Defendant may prepay all or part of the total prior to dates on which installments are due.

All criminal monetary penalties are made to the clerk of the court.

The defendant organization shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

   Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant organization shall pay the cost of prosecution.

☐ The defendant organization shall pay the following court cost(s):

☐ The defendant organization shall forfeit the defendant organization's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
           Sheet 4A — Schedule of Payments

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment—Page _____ of ____6____

## ADDITIONAL DEFENDANTS AND CO-DEFENDANTS HELD JOINT AND SEVERAL

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

AO 245E   (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
            Sheet 4B — Schedule of Payments

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment — Page _____ of _____6_____

## ADDITIONAL FORFEITED PROPERTY

AO 245E    (Rev. 12/03) Judgment in a Criminal Case    Organizational Defendants
           Attachment — Statement of Reasons

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.

Judgment — Page   5   of   6

CASE NUMBER:  CR 16-0199 YGR

# STATEMENT OF REASONS

☐ The court adopts the presentence report and guideline applications **WITHOUT CHANGE**.

## OR

☐ The court adopts the presentence report guideline applications **BUT WITH THESE CHANGES**:

**Guideline Range Determined by the Court:**

☐ The defendant organization is a criminal purpose organization pursuant to U.S.S.G. §8C1.1.

## OR

☐ The calculation of the guideline fine range is unnecessary because the defendant organization cannot pay restitution pursuant to U.S.S.G. §8C2.2(a).

## OR

Total Offense Level:   27

Base Fine:   $8,500,000.00

Total Culpability Score:   4

Fine Range:  $ 6,800,000.00    to  $ 13,600,000.00

☐ Disgorgement amount of $ _____ is added to fine pursuant to U.S.S.G. §8C2.9.

☐ Fine offset amount of $ _____ is subtracted from fine pursuant to U.S.S.G. §8C3.4.

☐ Fine waived or below the guideline range because of inability to pay pursuant to U.S.S.G. §8C.3.3.

## RESTITUTION DETERMINATIONS

Total Amount of Restitution: $   3,000,000.00

☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

☐ For offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

☐ Restitution is not ordered for other reasons:

☐ Partial restitution is ordered, pursuant to 18 U.S.C. § 3553(c) for the following reason(s):

AO 245E   (Rev. 12/03) Judgment in a Criminal Case .   Organizational Defendants
Attachment A — Statement of Reasons

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:   CR 16-0199 YGR

Judgment — Page   6   of   6

## STATEMENT OF REASONS

☑  The sentence is within the guideline range and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐  The sentence departs from the guideline range:

   ☐  upon motion of the government, as a result of a defendant's substantial assistance, or

   ☐  for the following specific reason(s):

AO245E    (Rev. 12/03) Judgment in a Criminal Case    Organizational Defendants
          Attachment B — Statement of Reasons

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.                Judgment — Page _____ of ___6___
CASE NUMBER:  CR 16-0199 YGR

## ADDITIONAL FINDINGS AND GUIDELINE APPLICATION CHANGES

AO245E    (Rev. 12/03) Judgment in a Criminal Case   Organizational Defendants
          Attachment C — Statement of Reasons

DEFENDANT ORGANIZATION:  DISCOVERY SALES, INC.
CASE NUMBER:  CR 16-0199 YGR

Judgment — Page _____ of _____6_____

## ADDITIONAL REASONS FOR DEPARTURE FROM THE GUIDELINE RANGE